Bebkard Byak, P. J.
On April 2, 1955, upon court order, claimant Thomas Crean was admitted to Pilgrim State Hospital. The mental diagnosis was dementia praeeox, paranoid type. A physical examination disclosed a 33-year-old male of good nutrition, good muscular development, no chronic or acute disorders, no heart murmurs, elastic arteries, resonant percussion, good entry on auscultation and no rales, normal motor functions and normal reflexes. Shock therapy was indicated, recommended, and on May 2 was consented to by the claimant’s wife and nearest relative.
Beginning on May 16 and concluding on July 12 claimant was given 11 shock treatments. Beginning early in June claimant began complaining to staff attendants about pain in his back. He had received his 5th treatment on June 3. After consultation with a doctor on July 13 an X-ray examination was ordered. It disclosed no evidence of fractures or dislocation of the sternum but there was “ evidence on the lateral view of compression fracture of the bodies of D 4 and D 5. There is fifty per cent wedging at D 4 and twenty-five per cent wedging at D 5”.
*657 Claimant, who was discharged from Pilgrim in December, 1955 and who appears to have had complete recovery from his mental illness, sues the State of New York for damages alleging that its employees either negligently gave him electro-shock therapy or, in preparing him for it, failed to use necessary and proper accredited practices and failed to use the proper safeguards for the claimant’s physical well-being.
It is conceded by the Attorney-General, not denied, that the compression fractures of the two dorsal vertebrae resulted from the course of shock therapy treatments. He asserts, however, that the risk of such compression fractures is recognized in medical practice as a necessary concomitant of shock therapy. True, certain procedures to reduce the risk must be followed. Such precautions were described by qualified practitioners who were witnesses upon the trial. The burden of establishing that they were not taken in the treatments given to this claimant is upon bim who makes the assertion. The claimant testified that he felt pain in his back after the first treatment and that he told the attendant but “ did not see a doctor ”. He further testified that ‘ ‘ the attendant was about the only one you ever could speak to; that the doctor would go in and out ”; that he ‘ ‘ would tell his wife and she would go to the doctor and the doctor would say that was the result of the treatment
The prescribed course for claimant was 20 treatments. The course was interrupted after the 11th to await complete X-ray study and a negative report. It does not appear at what time the fractures occurred. It is argued that the treatments should have been discontinued earlier and as soon as he complained of resulting pain, that X rays used then would have disclosed the situation. This would appear to be speculative. We find that there is not here such a fair preponderance of the evidence as will hold the State of New York liable in negligence or for the malpractice of its employed physicians. In the absence of such a preponderance the claim must be dismissed.
Let judgment be entered accordingly.